## Ehrisman *versus* Roberts.

1. The question in the case was whether a sale of personal property was fraudulent. The court said to the jury: "Believing that fraud in fact and fraud in law are both palpably manifest in the whole transaction, we direct a verdict for the plaintiff." *Held* to be error, fraud in fact is for the jury, however plain a case it may be.

2. All the goods levied on under an execution were appraised at less than $300, and retained by the defendant under the exemption laws; they were exclusively the property of the defendant, who could sell or retain them as he pleased.

3. The goods were not in any manner subject to seizure as the goods of the defendant or of the purchasers from him.

March 30th 1871.   Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.   WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Lycoming county :* No. 228, to January Term 1871.

This was a feigned issue directed October 8th 1870, between William Roberts, as plaintiff, and Frederick Ehrisman, defendant, to try the right to $650, paid into court under the following circumstances :—

On the 3d of January 1870, two judgments, one for $600 and one for $100, were entered in the Common Pleas of Lycoming county in favor of Frederick Ehrisman against S. Murray Mitchell, on single bills with warrants of attorney; and on the same day executions were issued on both judgments; under these executions the sheriff levied on the personal property of Mitchell, consisting of the furniture, liquors, &c., in the "European Hotel" in Williamsport, of which Mitchell had a lease.   On the 12th of January, William Roberts entered judgment on a single bill with warrant against Mitchell for $620.   The sheriff returned with his levy, an appraisement of the goods seized by him, made at the request of Mitchell and taken by him under the exemption laws. The appraisement amounted to $217.75.   On the 15th of January, Mitchell, for the consideration of $250 to be credited on Ehrisman's judgment, made a bill of sale to Ehrisman of his "whole right, title and interest in and to the 'European Hotel,' situate on Court street, in Williamsport aforesaid, together with all the fixtures, wines, liquors and all material and stock on hand in the said hotel, together with the good-will in the same;" Mitchell still continuing in possession of the hotel and the personal property, but professing to carry on the business there as the agent of Ehrisman.

On the 19th of March 1870, Ehrisman made a bill of sale to John Casselberry of all his "right, title and interest in and to the European Hotel, * * * together with all and every of the stock, fixtures and furniture in and about the same, an inventory of which is hereto attached, which is intended to include all the fixtures, &c., mentioned or not in the said list, together with the

lease for building, made by John Tallman and William Elliot, for the building in which the said hotel is kept; for and in consideration of the above sale, the said John Casselberry is to pay the sum of one thousand five hundred dollars in manner following: seventy-five dollars cash, one note of four hundred and twenty-five dollars, payable on the 1st day of April 1870, and one other note payable sixty days from the date hereof for one thousand dollars."

Besides the lease, the list accompanying the bill of sale contained articles not contained in the inventory of the goods appraised and taken by Mitchell under the exemption laws.

Roberts issued an attachment execution to April Term 1870, on his judgment against Mitchell, with notice to Casselberry as garnishee. On the 3d of September 1870, on the petition of Ehrisman, he was allowed to come in and defend the attachment. Subsequently the money, $650, was paid into court and this feigned issue framed.

On the trial of the issue there was evidence given by the defendant for the purpose of showing actual fraud between Ehrisman and Mitchell.

Plaintiff's point was:—

That if they find that Mitchell sold the articles of property mentioned in the bill of sale to Ehrisman for the sum of $250, and that afterwards these same articles of property and other property of the said Mitchell, to wit, the lease of the hotel, the gas fixtures, bar, &c., were sold to John Casselberry for the sum of $1500, the jury is bound to presume in the absence of other evidence that the whole proceeds of the sale to Casselberry belonged to Mitchell except $250.

The defendant's points were:—

1. As the evidence in this case shows that the Act of Assembly, called the $300 law, was claimed by S. M. Mitchell, upon the execution issued against him by Roberts, and also upon fi. fa. issued by Ehrisman, and that the goods were appraised and set apart to him by the sheriff, that a subsequent sale by him of those goods to Ehrisman, even if such a sale was a fraud in law, would nevertheless give to Ehrisman a good title to the property.

2. Goods claimed and set apart under the $300 law, are the exclusive property of the claimant; they cannot be levied upon by another creditor, and if converted into a new stock, they are still protected by the exemption; the claimant of the goods has a right to keep or dispose of them as he sees fit without regard to the rights of other creditors.

4. As the evidence in this case shows that the property sold by Mitchell to Ehrisman, and by Ehrisman to Casselberry, was the same that was claimed by Mitchell under the $300 law upon the fi. fa. issued by Roberts, the said Roberts is estopped from claiming any part of the proceeds of said sale.

[Ehrisman *v.* Roberts.]

The court in the charge referred to many of the facts and proceeded :— * * *

["Mitchell introduced Ehrisman to the employees at the hotel as their 'new boss,' and said he had nothing further to do with it. But Mr. Ehrisman exercised no acts of ownership upon the premises nor over the property, and the employees had no other intercourse or acquaintance with him than the introduction; he left the next day and was not there afterwards. The employees continued under their engagements previously existing with Mitchell; paid over to Mitchell the proceeds of the bar as before; Mitchell remained in charge of the business. No change of name, sign, persons in charge or manner of conducting the business took place. Nothing indicated any change of ownership, save only the declarations of Mr. Mitchell. There is no evidence that any account of the proceeds of the hotel was ever rendered to Mr. Ehrisman, or to his agent, Mr. Wood.]

"Mr. Wood says he did not think that he was authorized to make a sale without consulting with Mr. Mitchell, that he was offered $1100, but Mitchell thought that was not enough for property which he had formally sold but a few weeks previous for $250. On the 17th of March a sale was made to John Casselberry for $1500, all to be paid within sixty days. The schedule of property sold to Casselberry includes many articles not contained in the appraisement schedule, such as eighty gallons of wine, &c. * * * And it appears from the evidence that the lease and good-will of the establishment passed by the sale to Casselberry. We have no other evidence of the value of these articles than the inference to be drawn from the relative valuations placed upon the two schedules. The appraisement schedule was valued at $217.75. The schedule to Casselberry at $1500. $111 of this purchase-money has been appropriated to the payment of a debt of Mitchell by the order of Ehrisman, and only $143 of it ever paid to Ehrisman. $650 of that purchase-money constitutes the fund in court, brought in upon an attachment execution issued by Roberts in his judgment.

["Several points have been submitted to the court by the counsel for each of the parties to this issue, which we propose to answer substantially, by directing you to render a verdict for the plaintiff for the amount of his judgment against S. M. Mitchell, believing that fraud in fact and fraud in law are both palpably manifest in this whole transaction.]

"We therefore instruct you that the so-called sale by Mitchell to Ehrisman, his father-in-law, purporting to include not only the articles appraised to him under the Exemption Law, amounting to $217.95, but also all the articles afterwards sold to Casselberry, the aggregate value of which was $1500, was fraudulent and void

[Ehrisman v. Roberts.]

as against creditors of Mitchell, for want of that change of possession required by law."

The verdict was for the plaintiff (Roberts) for $633.41.

The defendant took a writ of error, and assigned the parts of the charge in brackets for error.

*H. C. Parsons*, for plaintiff in error, cited Hanley v. O'Donald, 6 Casey 261; Bechtel's Appeal, 2 Grant 375; Forsyth v. Matthews, 2 Harris 103; Chase v. Ralston, 6 Casey 542.

*R. P. Allen*, for defendant in error, cited Milne v. Henry, 4 Wright 352; Hilliard on Sales 130, § 16; Brawn v. Keller, 7 Wright 104; Steelwagon v. Jeffries and Wife, 8 Id. 407; Dewart v. Clement, 12 Id. 413; Billingsley v. White, 9 P. F. Smith 464.

The opinion of the court was delivered, May 8th 1871, by

READ, J.—This judgment must be reversed, the court having directed the jury to render a verdict for the plaintiff, " believing that fraud in fact and fraud in law are both palpably manifest in the whole transaction." Fraud in fact was a question for the jury, and the court had no power to take it away from them and to decide it themselves, however plain a case it might be.

The plaintiff had two judgments against his son-in-law, S. M. Mitchell, entered on the 3d January 1870, for $600 and $100, and William Roberts also held a judgment against him for $620, entered 12th January 1870. Fi. fas. were issued on all these judgments, and the defendant claimed the benefit of the Exemption Law, and the whole property levied upon was regularly appraised at $217.75, and of course left in the defendant's possession.

So far as regarded the appraised articles, they were in relation to these three judgments the exclusive property of Mitchell who could sell or retain them as he thought proper. If sold, Roberts could neither follow the goods or the proceeds. The error, therefore, in the court was in not separating the goods not appraised from those which were exempted and appraised, and which were not in any manner subject to seizure as the goods of the defendant or of the purchasers from him.

Judgment reversed, and *venire de novo* awarded.