Beatrice FINBERG et al.

v.

Joseph A. SULLIVAN, Sheriff of Philadelphia County, and John Pettit, Prothonotary of The Court of Common Pleas of Philadelphia County, and Sterling Consumer Discount Company.

Civ. A. No. 77–4166.

United States District Court, E. D. Pennsylvania.

Nov. 21, 1978.

Bruce Fox, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs.

Jonathan Vipond, III, Ralph J. Teti, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

### I. INTRODUCTION

This suit raises certain issues as to the constitutional validity of Pennsylvania's

post-judgment garnishment procedures, Pa. Stat.Ann. tit. 42, Rule 3101, *et seq.* Motions for summary judgment have been filed by all parties except the judgment creditor. Upon careful consideration of all the issues, I have concluded that the mootness doctrine does not bar this action, that this case is not properly certifiable as a class action, and that the post-judgment garnishment provisions in question are offensive to neither the due process clause of the fourteenth amendment nor the supremacy clause contained in article VI of the Constitution.

## II. FACTUAL BACKGROUND

According to the present record,[1] the plaintiff, Beatrice Finberg (Finberg), is a judgment debtor and the defendant, Sterling Consumer Discount Company (Sterling), a judgment creditor as a result of a judgment by default entered against Finberg and in favor of Sterling in the Court of Common Pleas, Philadelphia County, on October 25, 1977.[2] Sterling proceeded to execute against Finberg's personal property in order to satisfy its judgment by means of the garnishment procedures in question. Pursuant to Rule 3103(a), Sterling filed a praecipe for a writ of execution with Americo V. Cortese,[3] the prothonotary of the Court of Common Pleas, Philadelphia County (the prothonotary), naming Finberg and the Philadelphia National Bank (the garnishee). The writ was transmitted to the defendant Joseph A. Sullivan, Sheriff of Philadelphia County (the sheriff), in accordance with Rule 3103(e), and the sheriff, on November 3, 1977, made service of the writ upon the garnishee pursuant to Rules 3108 and 3111. On November 4, the garnishee forwarded a copy of the writ to Finberg, as required by Rule 3140(a), accompanied by a letter informing her that $550 of her funds on deposit with the garnishee were being placed in a suspense account "pending disposition of this matter." These communications were received by her on November 7. On November 18, 1977, plaintiff received a copy of the garnishee's response to Sterling's interrogatories, as required by Rule 3140(b).

Shortly thereafter, Finberg filed an action in state court seeking to release the garnished funds to her use. On December 8, 1977, by order of a state court judge, $300 of the garnished $550 was released to Finberg by the garnishee. The basis for this release was a joint recognition by the parties that under state law there existed a $300.00 exemption from garnishment for debtors such as Finberg.[4] Following certain pretrial discovery, Finberg and Sterling, the loan creditor, reached an agreement whereby the remainder of the funds still held by the garnishee would be released. On May 30, 1978, Finberg was notified by the garnishee that $226.50 was being restored to her use but that $23.50 was being retained as a service charge to cover the garnishee's expenses resulting from the garnishment. Thus, with the exception of the $23.50 service charge, all of the garnished funds have been returned to Finberg.

The allegations of the amended complaint with respect to the plaintiff Beverly Demcher are rather scanty. It appears simply that Demcher's bank account with the First Pennsylvania Bank in Philadelphia containing $319.41 was garnished on or about May 31, 1978, in much the same way that Finberg's account was garnished. The garnishment of Demcher's bank account

---

1. The record consists of an amended complaint, motions to dismiss and responses thereto, cross motions for summary judgment and responses thereto, the uncontroverted affidavit of plaintiff Finberg, and a stipulation of certain facts. The parties have not stated anywhere, nor does the record suggest, that there is a dispute as to any material fact and, therefore, the case is ripe for final summary disposition. *See* Fed.R.Civ.P. 56.

2. *Sterling Consumer Discount Co. v. Finberg,* May Term, 1977, No. 5678.

3. The original complaint named Cortese as a defendant. In the amended complaint, John Pettit, successor to this office and present prothonotary has been substituted for Cortese. *See* Fed.R.Civ.P. 25(d)(1).

4. *See* Pa.Stat.Ann. tit. 12 § 2161.

was related to a civil judgment entered against her in the courts of Delaware County, Pennsylvania. She alleges that to this date she has been deprived of the use of those garnished funds. However, nowhere does Demcher allege that the funds garnished include any benefits paid to her through federal social security programs—funds that Congress has determined should be exempt from garnishment. *See* note 5 *infra.*

Plaintiffs, John and Patricia Dzubak (the Dzubaks), are also judgment debtors who allege that their bank account with the Philadelphia National Bank was garnished on April 19, 1978, pursuant to the garnishment provisions in question. However, as a result of a petition filed in state court, all of the Dzubaks' garnished funds were released to their use on April 27, 1978. It should also be noted that the Dzubaks have not alleged that any of the funds garnished are social security funds.

### III. PROCEDURAL HISTORY

Plaintiff's amended complaint contains two counts. Count I alleges that the action of the state defendants in causing the summary and ex parte garnishment of plaintiffs' bank accounts violates the due process clause of the fourteenth amendment, in that no prior notice of the garnishment was given to the judgment debtors, nor was a prior hearing afforded on the issue of the debtors' possible defenses or exemptions to the garnishment. Alternatively, Count I asserts that even if due process does not require prior notice and a hearing, the garnishment procedures are nevertheless constitutionally frail because they do not provide for notice to the judgment debtor of the exemptions and legal or equitable defenses that may be raised, and because there is no absolute right to a prompt post-garnishment hearing.

Count II asserts that under federal law, 42 U.S.C. § 407, monies paid pursuant to the Social Security Act are exempt from levy or execution,[5] and therefore the garnishment procedures deprive judgment debtors like Finberg of their federal rights in violation of the supremacy clause of article VI of the Constitution.

In both the original and the amended complaint, the plaintiffs seek certification of a class composed of individuals situated similarly to the plaintiffs. *See* Part IV *infra.*

The plaintiffs, on their own behalf and on behalf of the class they purport to represent, seek:

1. a declaratory judgment to the effect that the summary garnishment procedures in question are violative of the fourteenth amendment and unlawfully conflict with federal statutory law;

2. a money judgment against Sterling and in favor of plaintiff Finberg in the amount of $23.50; and

3. a reasonable attorney's fee.

The sheriff and the prothonotary filed, in February 1978, their individual motions to dismiss the complaint, setting forth various grounds in support thereof.[6] These motions were denied by order of May 22, 1978, and the parties were directed to file any motions for summary judgment which they deemed appropriate. Naturally, one focus of the cross-motions for summary judgment was the possible mootness of Finberg's claims in light of the fact that she had recovered the use of virtually all of her bank funds. Following the filing of these cross-motions, but only one business day prior to the due date for responses thereto, plaintiff filed her amended complaint. The new complaint differed from the original

---

**5.** 42 U.S.C. § 407 states:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, *and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process,* or to the operation of any bankruptcy or insolvency law.

*Id.* (emphasis added).

**6.** These grounds included a quasi-judicial immunity from suit, abstention, failure to join an indispensable party, and failure to state a claim upon which relief can be granted.

complaint only in the addition of plaintiff Demcher and the plaintiffs Dzubaks, and the relatively insignificant substitution of defendant Pettit for defendant Cortese. Although it appears that the only purpose of the amended pleading was to avoid the thorny issue of whether the denial or non-certification of a putative class action in conjunction with the apparent mooting of the putative class representative's claims renders the entire case moot and therefore non-adjudicable, there is little question that under the federal rules the plaintiff was entitled "[to] amend [her complaint] once as a matter of course at any time before a responsive pleading [was] served." Fed.R. Civ.P. 15(a).

## IV. CLASS ACTION CLAIMS

■ Plaintiffs seek certification of a class composed of all judgment debtors with personalty in Philadelphia who are or may be subject to having their personalty garnished under the Pennsylvania Rules of Civil Procedure and who have either legal or equitable defenses to all or part of the execution. Plaintiffs also desire certification of a subclass of all judgment debtors who have personalty in Philadelphia which is exempt from execution by virtue of federal law.

Because the merits of the constitutional claims asserted here on behalf of the class have for the reasons set forth below been decided adversely to the plaintiffs, class action certification would serve no purpose and is therefore denied.[7]

## V. MOOTNESS

■ Courts may not, consistent with the "case or controversy" requirement of article III, hear cases which are moot, i. e., where "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23

L.Ed.2d 491 (1968). Defendant contends that the return to the plaintiff of the bulk of the exempt funds renders the claim dead and the case moot. On the contrary, plaintiff Finberg has in fact not recovered all of the funds originally garnished from her bank account; $23.50 of the $550.00 originally garnished was retained by the bank to cover its expenses resulting from the garnishment, and it is this sum that the plaintiff in her amended complaint now seeks as damages. Clearly, this is a "live" claim, albeit a modest one; it differs from its predecessor in amount, but not in kind. And certainly, any claim for monetary damages resulting from operation of a challenged statute is a legally cognizable one. *See Flagg Bros, Inc. v. Brooks*, 436 U.S. 149, 154 n.2, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). This case is, therefore, not moot, so that I must proceed to the merits of the plaintiff's claim.

## VI. SUPREMACY CLAIM: 42 U.S.C. § 407

■ The Supreme Court has established a two-pronged analysis for determining whether a state statute, regulation or rule of court is in conflict with a federal statute. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). First, the purposes of the state and federal statutes must be examined; then they must be compared, to determine whether, in purpose or in effect, the state statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 649, 91 S.Ct. at 1711, *quoting Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

The primary purpose of the garnishment procedures here in question is the effective and convenient enforcement of creditors' money judgments. The purpose of the exemption in § 407, on the other hand, is to protect from the claims of creditors, funds

---

**7.** In any event, it is doubtful that the plaintiffs have sufficiently established that there are questions of fact common to the entire class they seek to represent. Fed.R.Civ.P. 23(a)(2). The broad spectrum of federal and state exemptions that may be claimed in a Pennsylvania garnishment proceeding implicates a correspondingly broad spectrum of factual scenarios, only a fraction of which is spanned by the facts presented in this case.

intended by Congress for the maintenance and support of Social Security recipients and their families, *Brown v. Brown*, 32 Ohio App.2d 139, 288 N.E.2d 852 (1972), so that a payment of money to a needy individual pursuant to one law cannot readily be rescinded by virtue of another.

 At first blush, there is a conflict here, between Pennsylvania's desire to aid creditors and Congress' desire to hinder them. And yet, Pennsylvania's garnishment statute does not on its face conflict with § 407, since it makes no express provision for the garnishment of Social Security funds. Nor is there any other reason to suspect that the Pennsylvania legislature intended to subvert either the purpose or the effect of § 407. On the contrary, because the enactment by Congress of the Social Security Act preceded the enactment of the Pennsylvania garnishment statute by some twenty-five years, it is probable that the Pennsylvania legislature recognized and respected the various exemptions contained in the Social Security Act. It is a settled rule of statutory construction that a legislature is presumed to act with knowledge of existing law on the subject, and absent a clear manifestation of contrary intent, its enactments are presumed to be harmonious with that existing body of law. *See, e. g., United States v. Sanders*, 145 F.2d 458 (10th Cir. 1944); *Zientek v. Reading Co.*, 93 F.Supp. 875 (E.D.Pa.1950); *Eckert v. Socony Vacuum Oil Co.*, 13 F.Supp. 342 (E.D.Pa. 1935). Moreover, where two statutes address the same subject, courts have generally striven to give effect to both, if possible. *See, e. g., United States v. Borden Co.*, 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181 (1939). Consequently, I conclude that the Pennsylvania statute neither contemplates nor authorizes any garnishment in violation of § 407, and that any garnishment of Social Security funds conducted under color of the Pennsylvania rules is unlawful, so that one who proceeds with such a garnishment will be liable for the return of the unlawfully seized, federally exempted funds.

 The noble goals of a state statute, however, are not alone sufficient to exonerate the statute under the Supremacy Clause; its actual effect upon federal law must also be weighed. *Perez, supra*, 402 U.S. at 652, 91 S.Ct. 1704. Although in this case the application of the Pennsylvania statute had the undisputed effect of vitiating the plaintiff's right under federal law to an exemption for her Social Security funds, the abridgment of this right was not compelled by the statute as I have construed it above, but rather was an unauthorized and unlawful seizure of exempt funds. I conclude that the Pennsylvania Rules of Civil Procedure Rules 3101 *et seq.* are neither in purpose nor in effect repugnant to the "full effectiveness of federal law," *id.*, and therefore are not violative of the principle contained in the supremacy clause of the federal Constitution.

## VII. DUE PROCESS CLAIMS

The plaintiffs contend that the Pennsylvania garnishment provisions violate the due process clause of the fourteenth amendment because they neither provide for notice and a hearing prior to the initial seizure of funds nor do they provide adequate notice and hearing after the seizure to insure that property of a debtor is not wrongfully converted. For the reasons set forth below, I cannot agree.

 The determination of whether particular state statutory provisions afford the minimum due process guaranteed by the fourteenth amendment requires a balancing of the governmental and private interests at stake, as well as consideration of "the risk of an erroneous deprivation of [a private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

The government's most substantial interest—one that for the most part overlaps the interests of the judgment creditor—lies in the speedy satisfaction of judicially validated claims. By insuring that money judgments fairly obtained in court are expeditiously and inexpensively reduced to money

form, the state seeks to promote and protect commercial transactions and the extension of credit to consumers within its borders.

The private interests at stake here are those of the judgment debtor. The debtor obviously has a direct and substantial interest in not being wrongfully deprived of his property. This interest is doubly compelling where, as in the case of plaintiff Finberg, the money that is threatened with garnishment represents the debtor's sole means of support and is in fact paid to the debtor, pursuant to statutes like the Social Security Act,[8] largely on the basis of the debtor's demonstrated degree of disability or destitution. Furthermore, the seizure of a social security recipient's bank account works a potentially far more severe deprivation of property than does the oft-litigated device of wage garnishment. See, e. g., *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Brown v. Liberty Loan Corp.*, 539 F.2d 1357 (1976). Clearly, the impoundment of a single paycheck is more readily tolerable to an able-bodied, gainfully employed debtor than the garnishment of all accumulated life savings is to an elderly, needy social security recipient like the plaintiff Finberg.

There is one additional concern that is shared equally by all parties—the state, the judgment creditor and the judgment debtor: all are concerned with the legality or propriety of the garnishment process. The judgment creditor has an interest in the immediate seizure of only those assets which under the law are properly subject to seizure, since the wrongful garnishment of a debtor's assets, e. g., in violation of a state or federal exemption, merely tends to increase the delay and expense of the garnishment process. By the same token, the confidence bred in creditors by the certainty of the method of collection furthers the state's interest in the smooth flow of commerce within its borders. And of course the impecunious judgment debtor is greatly concerned with the lawfulness of the procedure whereby he is deprived of the funds needed to procure the bare necessities of life.

In balancing all the governmental and private interests implicated in this case, the judgment debtor's interest in bare survival must invariably predominate over the interest of creditors and the state in mere economy of debt collection. The right to a subsistence way of life is considered fundamental for due process purposes. *Goldberg v. Kelly*, 397 U.S. 254, 263–264, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The question arises, then, whether Pennsylvania's garnishment statute contains sufficient procedural safeguards to minimize the risk of an erroneous deprivation of this precious right.

In the context of pre-judgment garnishment, due process normally requires prior notice and an opportunity for a hearing. *See, e. g., Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1973); *Sniadach, supra*.[9] The demands of due process are considerably less stringent, however, where the garnishment occurs after the entry of judgment. In *Endicott-Johnson Corp. v. Encyclopedia Press*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), the Supreme Court rejected the contention that a New York statute authorizing post-judgment garnishment without notice or a hearing conflicted with the due process clause, reasoning that:

[T]he established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental pro-

---

**8.** The three hundred dollar Pennsylvania statutory exemption, 12 P.S. § 2161, is similarly protective of all needy judgment debtors.

**9.** Pre-judgment garnishment may be permitted without prior notice and a hearing, however, where the statutory scheme provides adequate alternative safeguards, by requiring, for example, that the seizure be subject to judicial control throughout, that the debtor be afforded an immediate post-seizure hearing, and that the writ will issue only upon the creditor's verified affidavit and upon the creditor posting a sufficient bond. *Mitchell v. W. T. Grant*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

ceedings are taken to reach his property in satisfaction of the judgment. Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take "notice of what will follow," no further notice being "necessary to advance justice."

Although the *Endicott-Johnson* rationale is considered by some to have been rejected by the subsequent decision in *Griffin v. Griffin*, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946); *see Hanner v. DeMarcus*, 389 U.S. 926, 88 S.Ct. 288, 19 L.Ed.2d 277 (1967) (Douglas, J., dissenting); *Brown v. Liberty Loan Corp.*, 539 F.2d 1355 (5th Cir. 1976); Greenfield, *A Constitutional Limitation on the Enforcement of Judgments-Due Process and Exemptions*, 1975 Wash.U.L.Q. 877, 892; Kennedy, *Due Process Limitations on Creditor's Remedies: Some Reflections on Sniadach v. Family Finance Corp.*, 19 Am. U.L.Rev. 158, 173–76 (1970), the two cases are in fact distinguishable. In *Griffin*, a 1926 alimony decree had been modified in a fully contested proceeding in 1936 and again modified in a 1938 hearing of which the defendant received no notice. The Court held that the failure to notify the defendant of the 1938 proceeding denied him due process as to any defenses which might have arisen after the 1936 hearing. This holding does not, in my opinion, disturb the *Endicott-Johnson*, decision, which deals only with the enforcement of judgments in which liability has been fully and finally adjudicated. Where there is no final adjudication of liability, as in the case of alimony decrees perpetually subject to modification for changed circumstances, a defendant cannot be said to have had his "day in court." This approach to *Endicott-John-*

*son* and *Griffin* is entirely in harmony with the *Griffin* Court's assessment that: "Due process does not require that notice be given before confirmation of rights theretofore established in a proceeding of which adequate notice was given." 327 U.S. at 233–34, 66 S.Ct. at 563.

The additional fact that the *Griffin* Court never mentioned the *Endicott-Johnson* decision further buttresses the conclusion that the due-process-invoking facts in the two cases are fundamentally dissimilar, and that the related legal theories upon which they were decided are therefore quite compatible.

Finally, although some lower courts have declined to follow *Endicott-Johnson, see Betts v. Tom*, 431 F.Supp. 1369 (D.Hawaii 1977); *First Nat'l Bank v. Hasty*, 410 F.Supp. 482 (E.D.Mich.1976), the fact remains that *Endicott-Johnson* has never been expressly overruled. When squarely presented forty-four years latter with an opportunity to reject that case's reasoning, the Supreme Court dismissed the writ of certiorari as improvidently granted. *Hanner, supra.*

The *Endicott-Johnson* doctrine, therefore, lives on, and this court is in good company in so holding. *See, e. g., Katz v. Ke Nam Kim*, 379 F.Supp. 65 (D.Hawaii 1974); *Langford v. Tennessee*, 356 F.Supp. 1163 (E.D.Tenn.1973); *Moya v. DeBaca*, 286 F.Supp. 606 (D.N.M.1968), *appeal dismissed*, 395 U.S. 825, 89 S.Ct. 2136, 23 L.Ed.2d 740 (1969).[10]

Moreover, this notion of constructive notice and hearing based on an underlying final determination of liability may further be supported by the Supreme Court's prejudgment attachment line of decisions. *Mitchell v. W.T. Grant*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes,*

---

**10.** In *Brown v. Liberty Loan Corp.*, 539 F.2d 1355 (5th Cir. 1976), the court adopted a diluted version of the *Endicott-Johnson* doctrine, holding that the underlying judgment "is not itself notice" of the later garnishment proceedings, but does serve "at least to alert the debtor" to the possibility of subsequent enforcement actions, *id.* at 1368, so that the underlying judgment is relevant but not determinative of

the notice issue in later garnishment proceedings. I decline, however, to compromise the apparently unabated vitality of the *Endicott-Johnson* decision to such an extent; while it is true that the underlying action does not afford *actual* notice of garnishment, I believe it does constitute sufficient *constructive* notice to completely preclude the need for any other type of actual notice prior to garnishment.

*supra; Sniadach, supra; see Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Hasty, supra.* In *Hasty,* Judge Pratt found that the fundamental concern of the Court in the pre-judgment line of cases—"to protect the debtor by requiring some assurance of the validity of the underlying claim prior to issuance of a writ," *id.* at 488—is determinative in the post-judgment context as well, by virtue of the central distinguishing feature of post-judgment garnishment:

> Seizure occurs after a full and final determination on the merits . . . . Accordingly, the debtor has been afforded a full range of due process. Certainly, then, a hearing on any remaining issue concerning the propriety of the garnishment may properly be postponed until after issuance, under the rationale of *Mitchell, supra.* A judgment concluding the merits of a case is obviously more than adequate to satisfy the requirement of partial pre-issuance safeguards and justify a delayed hearing.

*Id.* at 489.

I conclude, therefore, that due process cannot be said to require that plaintiff Finberg be given notice and an opportunity to be heard prior to the issuance of the writ of garnishment. A final adjudication of her liability to Sterling had been made on October 25, 1977. She was afforded a full range of due process in that proceeding,[11] and that judgment now stands as a legal fait accompli; it may not be modified, and can be satisfied only by payment. The issue of entitlement to exemptions, although not adjudicated in that judgment, is collateral to it, so that all the due process protections afforded there, both actual and constructive, weigh heavily in favor of postponing the necessary notice and hearing until after the writ issues.

The question arises, then, whether there are sufficient post-garnishment safeguards to protect the compelling, predominant interest of the judgment debtor in not being wrongfully deprived of a subsistence existence. It is my conclusion that sufficient safeguards do indeed exist.

The Pennsylvania Rules of Civil Procedure require that a garnishee promptly notify the judgment debtor of the garnishment, by forwarding to him a copy of the writ. Rule 3140(a). Further notice is afforded by the fact of the garnishment itself.[12] The case of plaintiff Finberg provides an example of the effectiveness of these notice devices: the writ of execution was served upon the garnishee bank on November 3, 1977, and a copy was forwarded to Finberg by certified mail the following day. Although the mailed copy did not reach her until November 7, she did have actual notice of the garnishment as early as November 4, when she was denied access to her savings account. Thus, as exemplified by Finberg's situation, the combined effect of the statutory notice provision and the likelihood of actual notice appears sufficient to insure that the judgment debtor will have an immediate opportunity to seek a hearing on the question of entitlement to exemptions.

But the most important requirement of due process, the Supreme Court advises us, is not notice, but "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). The Pennsylvania rules provide for a post-garnishment court hearing to determine whether the writ should be set aside or stayed because an exemption is claimed.

---

**11.** It is not relevant for due process purposes that the judgment against plaintiff Finberg was a default judgment. Due process offered her its protection, and she declined to accept it. The courts, alas, may lead debtors to water, but cannot make them drink.

**12.** Indeed, most states, apparently relying on the sufficiency of the actual notice afforded by

the seizure of the debtor's property, provide for no notice at all to judgment debtors. *See* Greenfield, *supra* at 883. This type of actual notice is especially prompt and effective where the garnished funds are certain to be immediately and sorely missed, as would be true of most funds exempt for the policy reasons set forth in Section VI above.

Rule 3121. An examination of the constitutional adequacy of this provision would entail a detailed assessment of its likely overall expeditiousness, and consideration of the difficult close question, posed by the plaintiff, of whether the timetables contained in local procedural rules would permit courts to set aside erroneous garnishments quickly enough to avoid unconstitutionally trampling the compelling interests of judgment debtors. *Brown, supra,* 539 F.2d at 1368. Fortunately, however, we are spared the necessity of these inquiries, because before a debtor ever need invoke Rule 3121 to protect in court his claimed exemptions, he can avail himself of the immediate redress provided by Rule 3123.

Rule 3123 defines the relationship between the judgment debtor and the sheriff executing the writ when the debtor claims an exemption. It provides in pertinent part:

> (a) A defendant entitled to a statutory exemption may claim it in kind or in cash at any time before the date of sale by notifying the sheriff of his claim and, if the exemption is claimed in kind, by designating the property which he elects to retain as exempt. Failure of the defendant to claim his statutory exemption shall not constitute a waiver thereof.

> (b) Upon receipt of a claim for exemption in kind the sheriff shall set aside, from the designated property, enough thereof as appraised by him, to equal the value of the exemption . . . . In the event of failure of the defendant to claim his statutory exemption, the sheriff shall similarly choose, appraise, and set aside property in kind.

> . . . . .

> (d) Any party in interest may, within forty-eight (48) hours, appeal to the court from the sheriff's appraisal or designation of property. The sheriff shall proceed with the sale as to the remainder of the property levied upon unless the sale shall be stayed by order of the court or written direction of the plaintiff.

The procedure outlined in this rule is quick and simple: the debtor asserts his claim for exemption directly to the sheriff, presumably by verified affidavit. No lengthy court procedures are required, since no adjudication of the debtor's entitlement to exemptions is made at that time. The rule simply mandates that a sheriff receiving a claim for exemption "shall set aside" the property so claimed. This he must do promptly, moreover, since his role is purely executory and not at all discretionary.

The effect of the sheriff's setting aside property in the exact and proper amount of the exemption is to cause exclusive possession of that property to revert to the debtor, who then has an absolute right to sell, retain or use it as he sees fit. *Hildebrand v. Bowman,* 100 Pa. 580, 582 (1882); *Erishman v. Roberts,* 68 Pa. 308 (1871); *Sener v. Scherff,* 10 Pa.C. 529, 531–32 (1891). And the effect of the reversion of exclusive possession to the debtor is to end, for due process purposes, the challenged property deprivation. Any subsequent delay in obtaining a hearing on the validity of the exemption under either 3123(d) or 3121 is, therefore, of no due process significance.

The procedure in Rule 3123(a) whereby a debtor may claim an exemption, moreover, appears to be as readily applicable to federal exemptions as it is to state exemptions, since that provision does not appear on its face to be limited to state exemptions, nor is there a significant rational basis for inferring such a limitation.[13] Thus, if plaintiff Finberg, upon learning of the garnishment on November 4, immediately claimed her federal exemption via Rule 3123, in-

---

**13.** Problems in effectuating a federal exemption like the one provided in § 407 of the Social Security Act arise from the fungible quality of money. There may be difficulty in sorting out the protected funds from other comingled funds of the debtor, or determining whether the funds have been so used or invested as to have lost the quality of exempt moneys. *See Porter v. Aetna Cas. Co.,* 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962). These problems, however, are not unique to federal exemptions. Pennsylvania law exempts many different types of funds as well, including veterans' benefits, workmen's compensation claims, life insurance and annuities, and certain pensions and retirement allowances.

stead of seeking only the hearing provided by Rule 3121, the federally exempt funds could then have been promptly restored to her use. That the funds were not promptly restored to her use does not signify a constitutional flaw in the statute, but a simple failure of the debtor to use all remedies properly available to her.

The second clause of subsection (b), however, whereby the sheriff is compelled to set aside exempt property even though the debtor has claimed no exemption, may be construed as applying only to the $300 state exemption that all debtors, including plaintiff Finberg, are entitled to, Pa.Stat.Ann. tit. 12 § 2161, because its uniform applicability to all judgment debtors, regardless of their individual circumstances, renders it capable of easy administration. The many other state and federal exemptions, however, are not so conveniently applied, and to require the local constabulary to administer them, sua sponte, would impose upon it too great a burden to ascertain the precise source and often ambiguous status of the garnished funds. In the present case, therefore, defendant Sheriff Sullivan was required automatically to set aside, as to all plaintiffs, the $300 state exemption. Again, that this was not automatically done does not signify a constitutional flaw in the statute; the prolonged property deprivation was caused instead by the failure of a city administrative official to fully carry out his statutory duties.[14]

■ I conclude, therefore, that the combined safeguards afforded by Rules 3121 and 3123 are more than adequate to protect the significant due process rights of judgment debtors.[15]

Finally, it is necessary to dispose of the second prong of the plaintiff's due process challenge, *i.e.*, that the Pennsylvania garnishment provisions deny judgment debtors due process by not providing them with notice of their right to various exemptions and defenses. There is no merit to this contention, since due process simply does not require that the state affirmatively inform individuals of their legal rights.

## VIII. CONCLUSION

According to the foregoing analysis, no constitutional flaw is evident in the challenged Pennsylvania statutory provisions. Declaratory relief is, therefore, denied as to the plaintiffs' constitutional claims.

■ Nevertheless, the garnishment of Finberg's savings account was unlawful because it was carried out in violation of exemptions available to her under both state and federal law. Defendant Sterling Consumer Discount Company is therefore liable, as the perpetrator of the unlawful garnishment, to the plaintiff Finberg in the amount of the garnishment fees retained by the bank, that is, the sum of $23.50 plus interest accruing from the date of the garnishment. Although this claim is probably not within the original jurisdiction of this court, I accept jurisdiction as pendant to the predominant constitutional claims.

---

**14.** Although the sheriff's denial of a debtor's claim for exemption gives rise to a cause of action in the debtor against the sheriff *Hatch v. Bartle*, 45 Pa. 166 (1863) (assuming, arguendo, that an exemption claimed in advance by the legislature on behalf of all judgment debtors has the same effect as one claimed by the debtor himself), I believe the proper form of relief for such an official derogation of duty would be a mandamus action, which plaintiffs have not sought in this case.

**15.** Since Rule 3123 is capable of securing the immediate release of all exempt property under both state and federal law, the subsequent hearing afforded by Rule 3121 appears to be simply an additional safeguard, a last resort in the claiming of exempt property. The provisions of Rule 3121 permit a writ to be stayed or set aside not only upon a clear showing of exemption, but also for reasons best left to the adjudicatory powers of a court, such as "a defect in the writ, levy or service, or . . . any other legal or equitable ground therefor." Rule 3121(a)(4), (b)(1)–(2), (d)(1)–(3).