**STRICK CORPORATION**

v.

**THAI TEAK PRODUCTS COMPANY, LTD. and Forest Products Company, Ltd., Defendants**

**and**

**Bangkok Industries, Inc., Garnishee.**

Civ. A. No. 74–1188.

United States District Court,
E. D. Pennsylvania,
Civil Division.

June 30, 1980.

Ralph G. Wellington, Philadelphia, Pa., for plaintiff.

J. Stokes Adams, III, Philadelphia, Pa., for defendants.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

Seeking to enforce a judgment entered against Thai Teak Products Company and Forest Products Company (judgment debtors), Strick Corporation (plaintiff-garnishor) served a writ of execution and interrogatories upon garnishee, Bangkok Industries, Inc. Significantly, Strick attached[1] not only the property of the nominal defendants, but also the assets of Dumrong Trading Co. and Dumrong Phanich Sawmill Company, two companies Strick contends are "alter egos" of the judgment debtors. The garnishee (Bangkok) concedes that the writ of execution and interrogatories are proper with respect to its relations with the judgment debtors, but it challenges Strick's authority to attach debts owed to the alleged "alter egos" and to compel answers to interrogatories directed to its relationships with those companies. Bangkok has raised preliminary objections challenging the procedures while Strick has requested sanctions against Bangkok for failure to answer the interrogatories.

Federal Rule of Civil Procedure 69 governs the procedures to enforce judgments in federal courts. Under Rule 69 the parties are referred to state practice for proceedings in aid of judgment. In addition, the judgment creditor may utilize either federal or state discovery rules. See generally, 7 Moore's Federal Practice ¶ 69.05[1]. Of central concern in the present case is the method under Pennsylvania law for attaching the property of companies alleged to be "alter egos" of judgment debtors. The parties dispute what procedure is authorized and whether that procedure affords due process of law.

Under Pennsylvania practice, execution is commenced by filing a praecipe for a writ of execution with the prothonotary. Rule 3103. The prothonotary issues the writ and indexes it against the defendant in the judgment index. Rule 3104. Service of the writ upon the garnishee attaches all property of the defendant which is in the posses-

---

1. Attachment as used herein includes garnishment and restraint of payment of a debt.

sion of the garnishee or which comes into its possession. Rule 3111. The garnishee is also restrained from paying any debt to defendant. Rule 3111(c). The garnishee must forward to the defendant a copy of the writ and its answers to interrogatories. Rule 3140. Thereafter, it is under no duty to resist the attachment or defend the action. Rule 3141.

Before submitting these procedures to constitutional scrutiny, we must first examine whether the writ was issued in accordance with Pennsylvania law. The garnishee notes that the rules provide only for garnishment of the property of "defendant". Under a literal reading of the rule, attachment of the Dumrong companies' property is not authorized since they were not nominally defendants in the original action. The garnishee contends that execution upon their property is permitted only if Strick proves prior to attachment that an alter ego relationship exists. Strick, on the contrary, argues that alleged alter egos are considered "defendants" under Pennsylvania rules for purposes of attachment. It also asserts that Bangkok may not challenge the attachment or the interrogatories by means of preliminary objections.[2]

Pennsylvania cases provide support for both of Strick's arguments. Under circumstances similar to those in the present case, Pennsylvania courts have permitted judgment creditors to attach the property of alleged alter egos before proving the existence of the alter ego relationship and have even limited the methods for contesting the attachment after it occurs. For example, in *Fleming v. Quaid*, 204 Pa.Super. 19, 201 A.2d 252 (1964), the Superior Court examined a writ of attachment execution direct-

ing the sheriff to attach the property of both a corporation (the alleged alter ego) and its sole shareholder (the judgment debtor). Even though the corporation disputed the allegation that it was the shareholder's alter ego, the court refused to permit the corporation to use either preliminary objections[3] or a petition to set aside the writ (Pa.R.Civ.Pro. 3121(d)) to raise the issue of ownership of the attached assets. It set forth the proper procedure as follows:

> "The corporation's remedy is to intervene formally under Pa.R.C.P. No. 2326 *et seq.*, and either (1) dissolve the attachment by giving security under Pa.R.C.P. No. 3143(b), after which the trustee will be in a position to pay the money to the corporation, leaving the issue of ownership as between the corporation and the judgment debtor to be determined in subsequent proceedings under the attachment; (2) file answers to the interrogatories stating that the property sought to be attached is the property of the corporation, not of the judgment debtor, and move for trial on this issue; or (3) move for trial upon the interrogatories and the garnishee's answers."

*Id.* at 255. In other cases, courts have followed the *Fleming* reasoning. *See, e. g., Unity Mutual Life Insurance Co. v. DiDominico,* —— Pa.Super. ——, 418 A.2d 397, (1980); *Copeland v. Banks*, 74 Pa. D&C 2d 348 (Phila.Co.), *aff'd*, 235 Pa.Super. 736, 345 A.2d 230 (1975); *Lantzy v. Velest Coal Co., Inc.*, 45 Pa. D&C 2d 502, 504 (Cambria Co. 1968) (dicta). Although some question may remain as to the propriety of determining the ownership of the property at a post-attachment hearing on preliminary objections,[4] Pennsylvania law clearly authorizes

---

**2.** Rule 3142(a) provides: "The defenses of immunity or exemption of property from attachment or a question of jurisdiction over the garnishee may be raised by preliminary objections."

**3.** The *Fleming* court seemed to regard the grounds stated in the Rule 3142(a) as exclusive. *Fleming v. Quaid*, 204 Pa.Super. 19, 201 A.2d 252 (1964).

**4.** In 9 Goodrich Amram 2d § 3142(a):1. at 478, the authors suggest that the grounds men-

tioned in Rule 3142(a) are not exclusive. The treatise states:

> The two defenses of exemption or immunity and lack of jurisdiction are properly understood as simply two grounds for objection which "may" be raised preliminarily and as the two which will most commonly be raised by the garnishee. There is nothing within the purposes of Rule 3142, and no other practical reason, why the garnishee should be prevented from raising the preliminary objections properly raised in an action of assumpsit under Rule 1017(b).

without prior notice or hearing the attachment of property not nominally owned by the judgment debtors. Thus we must examine whether the procedures utilized comport with the Due Process Clause of the Fourteenth Amendment.

## DUE PROCESS

### A. The Precedent

In a series of cases concerning pre-judgment attachment, the Supreme Court defined the contours of due process requirements. The first of these cases, *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), invalidated a statute permitting the garnishment of wages without notice and opportunity for hearing. In *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Court extended its *Sniadach* reasoning, finding unconstitutional Pennsylvania and Florida replevin statutes which permitted a secured seller to repossess goods by obtaining a writ from the court clerk. By a 4–3 majority the *Fuentes* court set forth the requirement of notice and hearing in sweeping terms, stating: "[T]he Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect." [5] *Id.* at 82, 92 S.Ct. at 1995. The holding in *Fuentes* was narrowed significantly two terms later in *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). *Mitchell*, like *Fuentes*, involved the seizure of property based upon

allegations by a secured vendor. The statute in *Mitchell*, however, contained procedural safeguards not found in the statute invalidated by *Fuentes*. The *Mitchell* law required the creditor to set forth in an affidavit the specific facts entitling him to sequestration and to present that affidavit to a judge for review. An immediate post seizure hearing was also required. The Court held that these safeguards adequately protected the debtor against mistaken deprivation. The dissent, on the contrary, argued that *Fuentes* required a prior hearing absent extraordinary circumstances.

The final case in this line brought *Fuentes* back to life, albeit in weakened form. In *North Georgia Finishing v. Di-Chem*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the Court relied on *Fuentes* to invalidate a Georgia garnishment statute. The statute permitted the creditor to garnish the bank account of the debtor by filing an affidavit with the court. No provision existed for notice, opportunity for early hearing or participation by a judicial officer. Where not even the *Mitchell* procedures protected the debtor's interest, due process did not permit deprivation of his property by a writ of garnishment.

■ For assistance in reconciling these holdings, we look to the decision of the Court of Appeals for the Third Circuit in *Jonnet v. Dollar Savings Bank of City of New York*, 530 F.2d 1123 (3d Cir. 1976). In *Jonnet* our Third Circuit declared constitutionally infirm Pennsylvania foreign attach-

---

In footnote 25, the authors find support for their position in the Pennsylvania Procedural Rule Committee note to Rule 3145(b)(2) which reads: "Objections to the attachment, other than the defenses of immunity or exemptions, must be raised preliminarily, See Rule 3142."

**5.** The Court then defined the exceptions to the rule as follows:

There are "extraordinary situations" that justify postponing notice and opportunity for a hearing. These situations, however, must be truly unusual. Only in a few limited situations has this court allowed outright seizure

without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. 407 U.S. at 90–91, 92 S.Ct. at 1999 (citations and footnotes omitted).

ment procedures [6] authorizing prejudgment attachment by the prothonotary based upon an affidavit containing only conclusory allegations and offering no opportunity for prompt hearing. The court first noted that even a temporary, nonfinal deprivation of property warranted scrutiny under the Due Process Clause. *Id.* at 1126 citing *Fuentes,* 407 U.S. at 84–87, 92 S.Ct. at 1996–1997. It then adopted a balancing approach to determine what procedures were constitutionally required. Plaintiff's interests in establishing jurisdiction and restraining property for eventual payment were weighed against defendant's interest in maintaining control of his property and defending the lawsuit without the burden of attachment. After balancing these interests, the court concluded that to offer sufficient protection for a debtor, the Pennsylvania statute at a minimum must provide the following: that process be instituted by first presenting to a legally trained official for his approval a sworn document stating substantially the facts; that a procedure be established to indemnify plaintiff for wrongful attachment; that a prompt hearing after seizure be held, and that some means not prejudicial to the plaintiff's interests be available by which he can dissolve the attachment.

The balancing approach adopted by the Third Circuit in *Jonnet* after review of the garnishment cases foreshadowed the Supreme Court's opinion in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Although *Mathews* involved procedures for determining eligibility for Social Security payments, the Court described as follows the factors that should be considered in assessing whether any government procedure affords due process:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Id.* at 335, 96 S.Ct. at 903.

Under *Mathews,* the due process concern that property not be taken on the basis of an erroneous conception of the facts is implemented by balancing the various interests of the government and private parties together with the efficacy of requiring additional safeguards.[7]

---

**6.** Foreign attachment is the process used to obtain jurisdiction over instate property of an out of state debtor in order to adjudicate a claim or to obtain satisfaction of a debt. This case resembles a foreign attachment in that an out of state corporation must defend the execution to protect its property in Pennsylvania. We asked the parties to brief the issue of personal jurisdiction because we were unsure whether the Dumrong companies had sufficient contacts with Pennsylvania to permit the court to determine the ownership of the debt owed by Bangkok. Although Strick asserts that the execution is an in rem proceeding because the ownership of the debt is at issue, we are not convinced that labeling the proceeding in rem automatically solves the jurisdictional problem. *See U. S. Industries v. Gregg,* 540 F.2d 142 (3d Cir. 1976), *quoting Jonnet v. Dollar Savings Bank of City of N. Y.,* 530 F.2d 1123, 1136–37 (3d Cir. 1976) (Gibbons, J., concurring) ("In short, the same limitations of fundamental fairness apply to any exercise by the state of judicial powers, whether that exercise be denominated in rem, quasi in rem or in personam. One of those limitations . . . is the *Inter-*

*national Shoe [International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95] rule.") *See generally, World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Rush v. Savchuck,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Because in addition to having assets in Pennsylvania, the Dumrong companies do business with and are suppliers of a Pennsylvania corporation, it appears that jurisdiction is proper. We make this finding without prejudice to a future motion presenting convincing facts to the contrary.

**7.** The need for at least some safeguards also derives from another concern of the Due Process Clause, the promotion of participation and dialogue by affected individuals in the decision-making process. *Marshall v. Jerrico Inc.,* —— U.S. ——, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). *See generally, Saphire, Specifying Due Process Values: Toward a More Responsive Approach to Procedural Protection,* 127 U.Pa.L.Rev. 111 (1978).

The procedures mandated by the *Jonnet* court after balancing the relevant interests satisfy the *Mathews* concern of minimizing the chance of a mistaken deprivation. Prior judicial review of specific allegations gives preliminary protection to defendant as does the bond requirement. The opportunity for prompt hearing minimizes the length of the deprivation while not unduly hampering the creditors interest. The hearing also provides for participation by the defendant in the attachment process. To the extent the interests in *Jonnet* and the Supreme Court cases [8] resemble those in the present case, the protections required may serve as guidelines for our examination of the Pennsylvania statute. Thus, our next task is to examine the various interests implicated by the post-judgment attachment of the property of alleged alter egos.

## B.   Post-Judgment Garnishment

Plaintiff contends that this case cannot be governed by the requirements set forth in the context of prejudgment attachment because plaintiff has already obtained a judgment in its favor. As Strick correctly notes, the balance between the interest of plaintiff and defendants is altered once a judgment is entered. Indeed, in *Finberg v. Sullivan*, 461 F.Supp. 253 (E.D.Pa.1978), Judge VanArtsdalen of this court upheld the constitutionality of the Pennsylvania Rules challenged here.[9] The dispute in *Finberg* centered upon the post judgment procedures for exercising statutory exemptions. The Finberg plaintiffs contended that the garnishment provisions violated the Due Process Clause because they neither provided for notice and a hearing prior to the initial seizure nor adequate notice and hearing after seizure. Applying the *Mathews* balancing test to the Pennsylvania garnishment provisions, the court first recognized a common interest of the government and judgment creditor—the speedy satisfaction of judicially validated claims. The interest of all parties in lawful garnishment process also entered the balance. Finally, the court considered the debtor's interest in not being wrongfully deprived of his property. In weighing these various interests, the court followed *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), by noting that the prior judgment had already afforded defendant his day in court and offered constructive notice of the forthcoming garnishment. The statutory requirement of notice from the garnishee and the attachment of the property itself supplement the constructive notice. Rule 3123 provided an immediate remedy by allowing a prompt exercise of exemption rights.[10] The court declined to decide whether a hearing under Rule 3121 alone offered the opportunity to be heard at a meaningful time and in a meaningful manner although

**8.** Other federal courts have followed the Supreme Court and invalidated prejudgment seizures. *See, e. g., Johnson v. American Credit Co. of Ga.*, 581 F.2d 526 (5th Cir. 1978); *Guzman v. Western State Bank*, 516 F.2d 125 (8th Cir. 1975); *MPI, Inc. v. McCullough*, 463 F.Supp. 887 (N.D.Miss.1978); *Grand Bahama Pet Co., Ltd. v. Canadian Transp. Agencies, Ltd.*, 450 F.Supp. 447 (W.D.Wash.1978); *Aaron Ferer and Sons Co. v. Berman*, 431 F.Supp. 847 (D.Neb.1977). In *Johnson*, the Court of Appeals for the Fifth Circuit found the prejudgment attachment statute facially unconstitutional for failure to provide for preattachment review by a judge with discretion to deny issuance of the writ. The *Guzman* court not only required judicial supervision but also notice and prior hearing to the debtor absent an emergency situation. Likewise in *MPI* the district court invalidated Mississippi attachment as

overreaching the narrow exception to the notice and hearing requirement recognized in *Fuentes*. In *Grand Bahama Pet Co.*, the court followed *Di-Chem* and invalidated a statute for failure to provide the protections found in *Mitchell*. *Berman* found the following provision lacking: judicial supervision and a creditor bond.

**9.** Other courts have also upheld postjudgment statutes that would not meet the *Jonnet* requirements. *See, e. g., Brown v. Liberty Loan Corp. of Duval*, 539 F.2d 1355 (5th Cir. 1976), cert. denied, 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977); *Betts v. Coltes*, 467 F.Supp. 544 (D.Haw.1979).

**10.** Rule 3123 permits exercise of a statutory exemption simply by notifying the sheriff of the claim before the date of sale.

it assumed that Rule 3121 did allow the opportunity for an eventual hearing.

If we were presented with the same confrontation between plaintiff's interests and defendants' interests that the court balanced in *Finberg*, we might be reluctant to retread the same ground. But in the present case, the due process rights of third parties are implicated because the judgment debtors are not the nominal owners of the property.[11] The *Endicott-Johnson* rationale is entirely inapposite when the property owners were not parties to the prior court proceeding and may have no knowledge of the judgment. Without proof of the alter ego relationship we cannot assume that the nominal owners have received their day in court nor that they can be expected to know that plaintiff will attempt to execute on their property. The constitutional rights of the Dumrong companies cannot be eliminated from the balance simply because Strick alleges they are alter egos of the judgment debtors. Just as the defendants in *Jonnet* were entitled to protection against mistaken taking of their property, so the Dumrong companies are entitled to some protection against mistaken attachment. Thus, we cannot simply rely on the *Finberg* holding, but must perform the task of weighing the competing factors with the interest of the Dumrong companies included in the balance.

The interests of the judgment creditor and debtor in the present case parallel those found by the *Finberg* court. Strick wishes speedy satisfaction of its judgment. Indeed, in the last four years it has been unable to locate and execute upon assets of the judgment debtor. Thus it has a strong interest in finding and attaching property. The government also has an interest in policing and encouraging orderly commercial transactions. Judgment debtors, of course, wish to avoid deprivation of their property. In the event they do own the attached property, their interest should be afforded the same weight as the interest of the judgment debtors in *Finberg*.

Because the attached property is nominally owned by the Dumrong companies, we must also consider their interests. Like the judgment debtors, the Dumrong companies wish to maintain control and use of their property. Attachment of the debt in the hands of the garnishee limits the companies' available capital at least temporarily. It may also sever relations between the garnishee and the Dumrongs since future debts become part of the attached property. Just as the *Di-Chem* and *Jonnet* defendants had strong interests in avoiding prejudgment attachment and thus retaining control of their property, so the Dumrong companies have strong interests in avoiding execution attachment prior to a showing that they are alter egos of the judgment defendants.

The risk that the companies will be temporarily deprived of property based upon an

---

**11.** The interests of third parties must be considered when assessing whether the Pennsylvania procedures comport with due process. In *Coe v. Armour Fertilizer Works*, 237 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027 (1915), the Supreme Court invalidated a Florida statute permitting execution against a stockholder for the unpaid subscription to the stock he holds when the corporation against which a judgment has been entered has no assets. The court stated:

> But before a third party's property may be taken to pay that indebtedness upon the ground that he is a stockholder and indebted to the corporation for an unpaid subscription, he is entitled, upon the most fundamental principles, to a day in court and a hearing

upon such questions as whether the judgment is void or voidable for want of jurisdiction or fraud, whether he is a stockholder and indebted, and other defenses personal to himself. *Id.* at 423, 35 S.Ct. at 628.

Thus the court expressly considered the rights of the property owner. To be sure the *Coe* court was not presented with an allegation that the shareholder was an alter ego of his company and arguably would require only a post attachment hearing. This early case, however, demonstrates the importance of the interest of non-judgment defendants. *Cf. Luria Bros. and Co., Inc. v. Allen*, 452 F.Supp. 732 (W.D.Pa. 1978) where distraint of the goods of a stranger to the leases was found unconstitutional.

erroneous conception of the facts is much greater in the present case than in the case of garnishment of the property of nominal judgment debtors. Strick obtained a writ of execution from the Clerk of Court after submitting an affidavit containing conclusory allegations. Prior to the deprivation, no requirement of notice, hearing or other safeguard existed to protect the Dumrong companies from inaccurate conclusory allegations. The settlement value alone may encourage plaintiff to err on the side of attaching property of new parties with known assets. The risk of mistaken deprivations created by this summary procedure resembles that experienced by defendants subject to pretrial attachment. In both instances, conclusory factual allegations by plaintiff's attorney resulted in immediate attachment with specification and proof of the allegations deferred to a later hearing.

Under Pennsylvania procedure, the protections for the garnishment defendants occur after attachment. After plaintiff's attorney submits the affidavit, secures the writ and attaches the property, notice is given by the garnishee to the garnishment defendants. At that point they may seek release of their property by filing a bond in an amount not required to exceed the value of the attached property. Rule 3143. *See also* Rule 3119. They may also intervene and move for trial on the question of whether they are alter egos. *See Fleming v. Quaid, supra.* Although not stated in the Fleming opinion, most likely the statutory authority for such a trial derives from Rule 3121(b) permitting a stay of execution by a party in interest showing any legal or equitable ground. There is no clear requirement on how promptly a hearing must be held.[12]

■ Because the garnishment defendants have interests akin to those of prejudgment defendants and those interests are unprotected prior to attachment, we find the Pennsylvania garnishment procedures unconstitutional as applied to the property of parties other than the judgment debtors. Additional safeguards would provide enhanced protection against mistaken attachment at minimal cost to the state. For guidance we look to the decisions of the Supreme Court as interpreted by our Third Circuit in *Jonnet.* An affidavit should be required clearly setting forth the factual basis for the conclusion that the garnishment defendants are alter egos of the judgment debtors. This affidavit should be presented to an official with competence to evaluate the claim and discretion to deny the writ. The writ should issue only if on its face probable cause exists for accepting its conclusion. Plaintiff should post a bond to indemnify the defendant for a mistaken taking. Finally, an immediate post attachment hearing should take place where plaintiff would be required to prove the existence of an alter ego relationship. The Pennsylvania rules statute under consideration totally fails to meet these criteria. Accordingly, we dissolve the writ attaching the property of the Dumrong companies.

## THE INTERROGATORIES

Strick also seeks sanctions against Bangkok for failure to answer interrogatories. The two cases cited by Strick in its supplemental memorandum of law, however, require at least some demonstration of the alter ego relationship prior to imposition of sanctions. In *Caisson Corp. v. County West Building Corp.,* 62 F.R.D. 331 (E.D.Pa.1974), a judgment creditor requested an order requiring the sole stockholder of the debtor corporation to answer certain deposition questions. To be sure, the court noted that

---

12. As stated in note 1 *supra*, in *Fleming v. Quaid* the Pennsylvania Superior Court rejected the use of 3121(d) to challenge the writ itself. This holding was recently reaffirmed in *Unity Mutual Life Insurance Co. v. DiDomenico,* ·— Pa.Super. —, 418 A.2d 397, (1980).

Even if our constitutional concerns lead us to predict that the Pennsylvania Supreme Court would permit a defendant to obtain a prompt post-attachment hearing under Rule 3121 or 3142(a), this would not alone cure the constitutional defects.

a judgment creditor must be given the freedom to make a broad inquiry to discover hidden assets of the judgment debtor. *Id.* at 334. But the court continued:

> There is no doubt that third parties can be examined in relation to the financial affairs of the judgment debtor. The appropriate manner to afford third parties protection is not to require that questions be phrased in a legalistically conclusory manner but rather to allow questions as to their personal activities, within limits, yet requiring some showing of the relationship that exists between the judgment debtor and the third party from which the court on a motion for a protective order can determine whether the examination has a basis. Id. at 335.[13]

 Similarly, in *Magnaleasing Inc. v. Staten Island Mall*, 76 F.R.D. 559 (S.D.N.Y. 1977), a judgment creditor sought discovery of a settlement agreement between judgment debtors and a third party. The court noted that discovery of assets of a nonparty is not generally contemplated by Rule 69(a)[14] but discovery would be permitted where the relationship between the judgment debtor and the nonparty is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets. In the present case, the only connection with the judgment debtor is the alleged alter ego relationship. No facts are before the court to show the bases for this allegation. Accordingly, at this time garnishee will be ordered to answer only those interrogatories relating to the nominal judgment defendants.

---

**13.** The court also found significant that the deponent was an officer of the corporation and could be deposed in that capacity.

**14.** *See also, Burak v. Scott*, 29 F.Supp. 775 (D.C.D.C.1939); 12 Wright and Miller, Federal Practice and Procedure, § 3014 at 72. Cf. 7 Moore's Federal Practice ¶ 69.05[1] at 69–29.