BRITISH INTERNATIONAL
INSURANCE COMPANY,
LTD., Plaintiff,

v.

SEGUROS LA REPUBLICA,
S.A., Defendant.

Civ.A. No. SA–00–CA–353OG.

United States District Court,
W.D. Texas,
San Antonio Division.

July 28, 2000.

Stephen E. Walraven, Shaddox, Compere, Walraven & Good, P.C., San Antonio, TX, Michael R. O'Donnel, Riker, Danzig, Schere,

Hyland & Perrett, L.L.P., Morristown, NJ, for plaintiff.

Ricardo G. Cedillo, Jason R. Cliffe, Davis, Cedillo & Mendoza, San Antonio, TX, for defendant.

## ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION

GARCIA, District Judge.

On this date came on to be considered the Memorandum and Recommendation of the United States Magistrate Judge, filed in the above-styled and numbered cause on June 23, 2000.

According to the records of the Court, the parties were served with a copy of the Memorandum and Recommendation on or about June 30, 2000. Any party who desires to object to a Magistrate Judge's findings and recommendations must serve and file its written objections within ten days after being served with a copy of the findings and recommendation. 28 U.S.C. § 635(b)(1). No objections to the Memorandum and Recommendation have been filed.

Because no party has objected to the Magistrate Judge's Memorandum and Recommendation, the Court need not conduct a de novo review. See 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). The Court has reviewed the Memorandum and Recommendation and finds it to be neither clearly erroneous nor contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir.), cert. denied, 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989). Accordingly,

IT IS ORDERED THAT the Memorandum and Recommendation of the United States Magistrate Judge filed in this cause on June 23, 2000, be and is ACCEPTED pursuant to 28 U.S.C. § 636(b)(1), and Plaintiff British International Insurance Company's motion to compel (Dkt. No. 1) Laredo National Bank, San Antonio, Texas, to produce the documents requested in Request Nos. 3 and 6 of the subpoena duces tecum served on January 11, 2000, is GRANTED, and Laredo National Bank's motion to quash and for protective order (Dkt. No. 4) is DENIED WITHOUT PREJUDICE to Laredo National Bank filing a further motion for protection requesting payment of the costs of complying with Request Nos. 3 and 6, or seeking redaction.

IT IS FURTHER ORDERED THAT during the fourteen (14)-day period following the issuance of the Order, the parties and Laredo National Bank are ORDERED to confer in furtherance of an agreement for payment by Plaintiff of the estimated reasonable costs of production by Laredo National Bank in advance of Laredo National Bank incurring the costs. Laredo National Bank shall fully comply with Request Nos. 3 and 6 on or before September 8, 2000, subject to a request for extension of time based on good cause. As noted in the Memorandum and Recommendation, pursuant to this Court's reference of the case for full pre-trial management, the Magistrate Judge retains this case for purposes of all pretrial matters.

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

MATHY, United States Magistrate Judge.

Pursuant to the order of referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(1)(B) and rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrates, effective January 1, 1994, in the Western District of Texas, the following report is submitted for your review and consideration.

### I. JURISDICTION

Plaintiff has filed this lawsuit to compel the production of certain information requested in a subpoena served on the Laredo National Bank, San Antonio, Texas. Subject matter jurisdiction and venue are unchallenged.

## II.  ROCEDURAL HISTORY

On April 6, 1990, plaintiff British International Insurance Company, Ltd. successor in interest to American Centennial Insurance Company ("ACIC") filed a complaint in the United States District Court for the Southern District of New York which sought payments for amounts allegedly due and owing under 26 reinsurance polices (docket no. 1, exhibit A).  On May 12, 1999, United States District Court Judge John F. Keenan entered an Order which adopted an October 30, 1998 report of United States Magistrate Judge Bernikov which recommended the entry of default judgment against defendant Aseguador Interacciones, S.A. Seguros La Republica, S.A. ("Interacciones") and in favor of plaintiff ACIC in the amount of $11,251,696.35 plus interest to the date of the judgment.  On May 18, 1999 the Clerk entered a default judgment in the amount of $11,801,024.98 in favor of ACIC and against Interacciones (docket no. 1, exhibit E).

On or about January 11, 2000, ACIC served a subpoena *duces tecum* on Laredo National Bank in San Antonio, Texas ("LNB") (docket no. 1, exhibit F).  The subpoena sought the production of all documents relating to any accounts held by Interacciones at LNB since 1996 and the production of all documents showing transfers between Interacciones and 12 named corporate entities.[1]  On February 11, 2000, LNB responded to ACIC's requests 1, 2, 4 and 5 by stating that "LNB does not have any responsive documents.  Interacciones, as that term is defined in the subpoena, is not a depositor or customer of LNB" (docket no. 1, exhibit M).[2]  LNB objected to requests 3 and 6 on the ground that compliance would require LNB to disclose information about customers who are not parties to the underlying proceedings.  Because ACIC "failed to comply with the applicable law governing discovery under these circumstances, LNB is not permitted to respond to requests numbered 3 and 6 of the subpoena" (docket no. 1, exhibit M).

On March 22, 2000, ACIC initiated this action to compel the answers to the subpoena by filing a motion to compel and memorandum in support (docket nos. 1 and 2).  LNB filed a response and motion to quash and for protective order on March 31, 2000 (docket no. 4).  ACIC filed a memorandum in the way of reply on April 14, 2000 (docket no. 5) and a motion for oral argument (docket no. 6).  On June 15, 2000, this case was referred to the undersigned for the disposition of all pretrial matters.

## III.  ISSUE

Should Laredo National Bank be compelled to provide information requested in a post-judgment subpoena?

## IV.  ARGUMENTS AND CONCLUSIONS OF LAW

### Federal Rule of Civil Procedure 69(a)

█  The Federal Rules of Civil Procedure authorize discovery to allow a judgment creditor to identify assets from which a judgment may be satisfied.  Fed.R.Civ.P. 69(a) provides, in pertinent part:

> of Grupo Financiero Interacciones, Inserf S.A., Interacciones Global, Inc., Banco Interacciones, S.A. Arrendadora Interacciones, S.A., Factorje Interacciones, S.A., *Interacciones Casa de Cambio, S.A.*, Servicios Corporativo Interacciones, S.A., Laredo National Bank or Laredo National Bankshares, South Texas National Bank of Laredo, Incus Co., Ltd. or Kline Investment Co., Ltd's and Interacciones at the Bank."

(Docket no. 1 at exhibit F).

1.  The subpoena stated in pertinent part:
     "Unless otherwise stated, the relevant time period is from January 1, 1996 to date.
     1.  All statements of any accounts that Interacciones *maintains at the Bank.*
     2.  Any application forms that Interacciones completed for accounts at the Bank.
     3.  Any canceled checks, deposit tickets, withdrawal slips, incoming wire transfers, outgoing wire transfers, debit slips, credit slips relating to transfers in excess of $5,000 by Interacciones at the Bank.
     4.  Any corporate resolutions of Interacciones relating to any accounts at the Bank.
     5.  Any and all signature cards for Interacciones at the Bank.
     6.  Any and all documents relating to any transfer of moneys between any accounts

2.  The subpoena defined "Interacciones" to mean "Aseguradora Interacciones, S.A., and any predecessors including, but not limited to, Seguros La Republica, S.A." (docket no. 1, exhibit F).

In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules *or* in the manner provided by the practice of the state in which the district court is held (emphasis added).

The scope of post-judgment discovery is broad. "[T]he judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *Caisson Corp. v. County West Building Corp.*, 62 F.R.D. 331, 334 (E.D.Pa.1974) (citations omitted). The purpose of post-judgment discovery is to learn information relevant to the existence or transfer of the judgment debtor's assets. *Federal Deposit Insurance Corp. v. LeGrand*, 43 F.3d 163, 172 (5th Cir.1995) ("The scope of post-judgment discovery is very broad to permit a judgment creditor to discover assets upon which execution may be made."); *United States v. McWhirter*, 376 F.2d 102, 106 (5th Cir.1967) ("The discovery provisions of the Federal Rules of Civil Procedure were designed to afford the parties the right to obtain information pertinent to the pending controversy, and to effectuate that purpose they are to be liberally construed. That basic philosophy applies with equal force whether the information is sought in pre-trial or in a post-judgment discovery proceeding.") (construing earlier version of Rule 69). Rule 69 expressly authorizes discovery from "any person," not merely the judgement debtor. *Strick Corp. v. Thai Teak Products, Co.*, 493 F.Supp. 1210, 1218 (E.D.Pa.1980). The literal text of Rule 69 allow the judgment creditor to elect to conduct discovery either under the applicable state law or the Federal Rules of Civil Procedure. *Federal Deposit Insurance Corp. v. LeGrand*, 43 F.3d at 171–72.

LNB does not contest that Fed.R.Civ.P. 69, and the underlying Rule 26 and related pre-trial federal discovery rules, authorize discovery of the type sought in requests 1, 2, 4 and 5. LNB has complied with those requests. Rather, LNB objects to the production sought in requests 3 and 6[3] on the ground that the documents are not relevant, would be burdensome to produce and, until ACIC complies with Texas Finance Code § 59.006, the production would subject LNB to liability to the non-parties whose records might be disclosed. Each of these arguments will be addressed below.

### Relevancy

■ With respect to relevancy, LNB argues that ACIC has alleged that LNB is owned and controlled by Interacciones' principals, Carlos Hank Rhon and Carlos Hank Gonzalez, but ACIC "has not provided this Court with any evidence as to the identity of Interacciones' principals" (docket no. 4 at 2 n. 2; *see also id.* at 3 n. 3). The implication of the argument is that without such a showing, ACIC has not shown the relevancy of the information requested in 3 and 6.[4]

As a preliminary matter, the Court notes that the scope of discovery under the current version of Fed.R.Civ.P. 26(b)(1) extends to any non-privileged matter which is relevant to the matter involved in the pending action even if not admissible itself if reasonably calculated to lead to such evidence. Rule 26(c) affords the Court the power to control discovery for good cause to protect a person from embarrassment, oppression or harassment. "Moreover, the limits of the concept of relevancy in connection with discovery in aid of execution of judgments, as here, must be somewhat different as a result of the fact that there is no longer an action pending which may be utilized by reference to its subject matter to assist in definition of the scope of discoverable matter." *Caisson Corp. v. County West Building Corp.*, 62

---

**3.** ACIC states in its reply that LNB has not objected to the production of documents relating to the transfer of monies between Aseguradora Interacciones, S.A., the successor-in-interest to Seguros La Republica, S.A. ("Interacciones") and LNB (docket no. 5 at 1–2). But, the Court has considered LNB's motion to quash and for protection as if it applied to itself as well.

**4.** ACIC argues that LNB has waived its right to object to the relevancy of the information because LNB did not interpose a relevancy objection with 14 days of service of the subpoena, as required by Rule 45(c)(2)(b), Fed.R.Civ.P. The discussion of the merits of the relevancy objection in this report is offered as if the objection were timely made.

F.R.D. at 333. "There is no doubt that third parties can be examined in relation to the financial affairs of the judgment debtor." *Id.* at 335.

LNB has advanced no argument or case law authority for the proposition that the 12 entities listed in the subpoena must be related in corporate ownership to Interacciones before production of documents relating to transfers of money to and from Interacciones is appropriate. *See Caisson Corp. v. County West Building Corp.*, 62 F.R.D. at 335, and authorities cited therein. LNB elsewhere concedes that the scope of Rule 69 discovery broadly includes comprehensive discovery of a judgment debtor's assets.[5] If those 12 named entities exchanged money with the judgment-debtor, the request is relevant to locating assets of Interacciones which may be used to satisfy the $11.8 million judgment. It is not necessary that the judgment creditor further show that the 12 entities are also related in any other respect. The subpoena does not seek from the 12 entities any information regarding their own assets or business—only transfers with Interacciones.

Therefore, the Court concludes that ACIC's inquiry has been kept pertinent to the goal of discovering assets of the judgment debtor. Requests 3 and 6 seek limited information from the 12 named entities with the limited purpose of discovering assets of the judgment debtor but not to pry unnecessarily into the business dealings of the 12 named entities. *Caisson Corp. v. County West Building Corp.*, 62 F.R.D. at 334.

### Reasonableness, Undue Burden, Overbreadth

■ With respect to the reasonableness, burdensomeness and scope of requests 3 and 6, LNB proffers that it is not able to use a computer to "name search" records on wire transfers, payors, payees or depositors. LNB states that to comply with requests 3 and 6, LNB will need to: determine if the 12 corporate entities are LNB customers; learn their LNB customer account numbers; pull all wire transfers, checks and deposits in and out of the accounts; and review the items to determine exact payor or payee name to know if they reflect a transfer to an from Interacciones (docket no. 4 at 10). LNB argues that "only" the Court itself could perform such a review because "LNB should not be permitted to use its judgment to interpret the transactions" (*id.*).

ACIC responds that LNB has already determined that two of the 12 named corporate entities are LNB customers (docket no. 5 at 6; docket no. 4 at exhibit 10) and that only one of the two has significant records with LNB (*id.*). ACIC argues that the need for manual retrieval and review of the subpoenaed items should not disqualify the request, since the information sought is within the scope of permissible discovery and since the Court can "award the nonparties any relief to obviate their incurring significant expense" (docket no. 5 at 6). ACIC argues that to minimize costs, ACIC already has limited the request to records pertaining to transfers from January 1, 1996 to the present and to transfers of $5,000 or more. Further, on February 10, 2000, ACIC provided LNB with three bank account numbers which ACIC has reason to believe are or were account numbers of Interacciones or its predecessor in interest, Seguros La Republica (docket no. 1, exhibit L).

Rule 34, Fed.R.Civ.P., provides: "A person not a party to the action may be compelled to produce documents and things or to submit to inspection as provided in Rule 45." Rule 45(c)(3)(A)(iv) provides that, upon timely motion, a court may quash or modify a subpoena if it "subjects a person to undue burden." The person seeking to quash or modify must meet "the heavy burden of establishing that compliance with the subpoena would be 'unreasonable and oppressive.'" *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D.Tex. 1998) (*quoting Barnes Foundation v. Township of Lower Merion*, 1997 WL 169442, at *4 (E.D.Pa. Apr. 7, 1997) (further citations omitted)). "When a subpoena is issued as a discovery device, relevance for purposes of

---

**5.** Docket no. 4 at 4 ("Although ACIC's Memorandum of Points and Authorities correctly outlines the law interpreting the Federal Rules of Civil Procedure applicable to post-judgment discovery, it fails to respect the twelve (12) corporate entities' non-party status and the application of the Texas Finance Code.") (note omitted).

the undue burden test is measured according to the standard of Rule 26(b)(1)." *Williams v. City of Dallas*, 178 F.R.D. at 110. Whether a subpoena is burdensome, depends on the facts of the case. "Among the factors that the court may consider in determining whether there is an undue burden are 'relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Williams v. City of Dallas*, 178 F.R.D. at 109 (*quoting Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C.Cir.1998) (further citations omitted)). The status of LNB as a nonparty entitles LNB to consideration regarding expense and inconvenience. *Williams v. City of Dallas*, 178 F.R.D. at 109.

Although undue burden can be found when a subpoena is facially overbroad, the Court cannot agree that requests 3 and 6 are such. The Court has already addressed the relevancy of the requests. Both requests are limited in time from January 1, 1996 to the present. The original complaint filed in the United States District Court for the Southern District of New York upon which default judgment against Interacciones was taken alleges conduct as far back as January, 1978 (docket no. 1, exhibit A). Following service of the subpoena, ACIC further limited its request to transactions equally $5,000 or more. Modification of a subpoena is preferable to quashing it and ACIC's voluntary modifications further reduce its burden on LNB.

LNB further argues that the phrase "any and all documents relating to" transfers of monies in request 6 shows the overbreadth of that request (docket no. 4 at 10–11), citing *Williams v. City of Dallas*, 178 F.R.D. at 115–16, in support. But, the Court in *Williams* struck down a request for "any and all documents related to" three named individuals when the subpoena contained no limiting language whatsoever. ACIC's subpoena, on the other hand, specifies the documents requested as "any and all documents relating to any transfer of monies between any accounts" of the 12 named business entities and Interacciones at the Bank (docket no. 1, exhibit F). The subpoena further describes "documents" in a manner standard with the way that word might be defined in connection with a duces tecum accompanying a notice of a deposition. The definition of "documents" is broad, but not so broad that an Order requiring ACIC to reimburse for the costs of conducting the search, as in *Williams*, is not sufficient to temper the prejudice.

The Court further does not agree that impermissible "judgment" must be exercised by LNB when it reviews retrieved items to read payor or payee names to produce only requested documents. LNB is well suited to review its own customer's documents. Understandably, as a major financial institution, LNB has made no argument that it's employees are not able to review its own records or banking records pertaining to its own customers to identify transfers to another company, specifically named, within a specified time period and in the amount of $5,000 or more. If good faith questions arise concerning whether an item uncovered by LNB falls within the scope of the subpoena, there are mechanisms for bringing that matter to the attention of the Court.

With respect to the three possible account numbers for Interacciones, LNB correctly notes that ACIC has not provided "any evidence that those account numbers are in actuality the account numbers of Interacciones" (docket no. 4 at 10 n. 11). In fact, in complying with requests 1, 2, 4 and 5, LNB has already indicated to ACIC that Interacciones is not a depositor or customer of LNB. This response would suggest that the three account numbers could not pertain to accounts of Interacciones. If not, then LNB may need to amend its response to requests 1, 2, 4 and 5. As the Court understands it, ACIC provided the possible account numbers to LNB, not to limit the subpoena request but to assist LNB in minimizing costs of compliance. ACIC need not submit any further verification to LNB, at this stage, that the three account numbers are in fact the account numbers of Interacciones. If LNB produces no records pertaining to those three accounts, then ACIC at that time may chose to move to compel records on those

three accounts and at that time will be required to make its showing of relevancy.

As noted, the status of LNB as a nonparty may entitle LNB to consideration regarding expense and inconvenience. *Williams v. City of Dallas,* 178 F.R.D. at 110, 113 (review of 30 boxes containing approximately 210 individual files, 52 audio transcripts, video tapes and accompanying transcripts, 23 trial and research notebooks, several hundred newspaper articles and investigative documents and approximately 1,000 documents produced in response to nine depositions not overly burdensome because requestor may be ordered to reimburse significant expenses) (and cases cited therein). As in *Williams,* the Court is willing to consider an application for an order awarding costs of production. Unlike *Williams,* the present record contains no specific information as to LNB's estimated its costs of compliance.[6] 178 F.R.D. at 113. Therefore, other than directing the parties to confer in furtherance of an agreement as to reimbursement for reasonable costs of research, copying and complying with requests 3 and 6, the Court declines to recommend on the present record that ACIC pre-pay expected costs or, of course, that reimbursement be ordered in any specific amount. The parties should confer on the reasonable costs of production before LNB begins to comply. *See* Fed. R.Civ.P. 45(c)(2)(B) advisory committee note for 1991 amendment ("The court is not required to fix the costs in advance of production, although this will often be the most satisfactory accommodation to protect the party seeking discovery from excessive costs. In some instances, it may be preferable to leave uncertain costs to be determined after the materials have been produced, provided that the risk of uncertainty is fully disclosed to the discovering party.").

### Texas Finance Code § 59.006

LNB's central objection to requests 3 and 6 is that the requests are invalid due to ACIC's failure to comply with Texas Finance Code § 59.006.[7] LNB concedes that § 59.006 does not apply to documents pertaining to transfers between LNB and Interacciones, but argues that ACIC should be required to give notice to the 12 non-party corporate entities named in the subpoena. ACIC requests the opportunity to comply with § 59.006 in the event the Court concludes it applies, but argues that federal rules—and not Texas rules—govern post-judgment discovery.

Texas Finance Code § 59.006(a) provides, in pertinent part:

> "This section provides the exclusive method for compelled discovery of a record of a financial institution relating to one or more customers. This section does not create a right of privacy in a record. . . ."

Texas Finance Code § 59.006(b) provides, in sum, that a financial institution shall produce a record in response to a record request only if the institution is given at least 24 days to comply and the requestor pays the institution the reasonable costs of complying, including the costs of copying, postage, research, delivery and attorney's fees or posts a cost bond in the estimated amount of those costs. Texas Finance Code § 59.006(c) further provides, in sum, that if the affected customer is not a party to the proceeding, the requesting

---

6. LNB does assert that ACIC should be required to fully reimburse "any expense associated with compiling and photocopying the transactions" in the event the Court were to order an *in camera* review (docket no. 4 at 10). LNB also argues, as discussed below, that ACIC should be required to comply with Texas Finance Code § 59.006 which further requires a requestor to pre-pay the financial institution's "reasonable costs of complying," including costs of reproduction, postage, research, delivery, and attorney's fees, or post a cost bond in an amount estimated by the financial institution to cover those costs. LNB's pleadings provide no cost estimates, perhaps on the theory that if the Court applied Texas Finance Code § 59,006, the parties then would confer regarding costs pursuant to the provisions therein.

7. Texas Finance Code § 59.006 became effective September 1, 1999. Prior to that time civil discovery of a customer record maintained by a financial institution was governed by Tex.Civ. Prac. & Rem.Code § 30.007. Neither party argues that any other state or federal law pertaining to disclosure of financial records, such as the Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq.* (government authority; *and see* definition of "customer"), applies instead or in addition to § 59.006 and, therefore, this report does not address any such provision. *Cf. In re David Porras,* 191 B.R. 357 (Bankr.W.D.Tex.1995).

party also should give the customer notice of its rights to file a motion to quash and seek the customer's written consent. Texas Finance Code § 59.006(d) provides, in sum, that if the customer who is not a party does not execute the written consent before the compliance is due, then the requesting party may seek the production of any complying documents to the Court *in camera* and the Court will decide if the document is relevant and may order any necessary redactions. In any event, the Court shall enter a protective order that prevents the record from being disclosed to a person who is not a party to the proceeding and being used for any purpose other than resolving that dispute.

LNB argues that because ACIC failed to comply with § 59.006, it was prohibited by law from complying with subpoena requests 3 and 6. LNB argues that "this is a diversity jurisdiction case, which requires the application of state law" and § 59.006 imposes duties on financial institutions as substantive Texas law (docket no. 4 at 6). LNB concedes that § 59.006 does not create a privilege (*id.*). ACIC argues that the Federal Rules of Civil Procedure apply, not Texas procedural rules governing discovery of financial records.

As noted, Rule 69(a) expressly provides that a party seeking to enforce a judgment may use either the federal *or* the state discovery rules to uncover information concerning the assets of the debtor and to aid in execution of the judgment. Perhaps the leading case on this issue is the Fifth Circuit's decision in *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1403 (5th Cir.1993), *cert. denied,* 510 U.S. 1073, 114 S.Ct. 882, 127 L.Ed.2d 77 (1994). In *Natural Gas Pipeline,* the Fifth Circuit reviewed a District Court's order requiring a non-party attorney to turn over his own federal income tax returns as a part of post-judgment discovery of the assets of a judgment debtor (the non-party attorney's client) under the Federal Rules of Civil Procedure and the inherent authority of a federal court. Although the Order was reversed in part, the Fifth Circuit affirmed the appli-

cation of the literal wording of the rule, noting "Rule 69 allows post-judgment discovery to proceed according to the federal rules governing pre-trial discovery, *or* according to state practice." 2 F.3d at 1405 (emphasis added). Therefore, the non-party's argument that the Texas practice would only partially justify the Court's order was not dispositive and the Fifth Circuit undertook a lengthy analysis of the federal procedural rules and the inherent power of a federal court.

Approximately two years later, in *Federal Deposit Insurance Corp. v. LeGrand,* 43 F.3d at 171–72, the Fifth Circuit again rejected the argument that state procedural rules must govern post-judgment discovery. In *LeGrand,* a government agency sought post-judgment production of the judgment debtor's tax returns. The judgment debtor argued that state procedural rules precluded such an order. The Fifth Circuit noted:

> Roughton [judgment debtor] erroneously argues that state procedural rules apply to the determination of the post-judgment discovery issue. F.R.C.P. 69(a) permits a party to obtain postjudgment discovery from the judgment debtor "in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held." A judgment creditor thus has the choice of which method to use.

43 F.3d at 171. The Fifth Circuit disregarded Texas law that would have protected the tax returns from discovery:

> FDIC [judgment creditor] clearly indicated its intent to pursue postjudgment discovery under the Federal Rules of Civil Procedure, thus, Texas law does not apply to the FDIC's discovery request. Instead, federal law will apply. Texas cases cited by Roughton to establish that production of the tax returns should not have been ordered are irrelevant.

43 F.3d at 171.[8] *See also Evans v. Chicago Football Franchise Limited Partnership,* 127 F.R.D. 492 (N.D.Ill.1989) (time limitations

---

**8.** The Fifth Circuit in *LeGrand* further stated that "state privilege laws should not be relied upon where the documents in question are sought by a governmental agency, like the FDIC." 43 F.3d at

172. There is no governmental agency involved in this case nor has a privilege been asserted (docket no. 4 at 6 and at 8).

contained in Illinois procedural law do not apply to post-judgement discovery under the Federal Rules of Civil Procedure).

■ Rule 69(a) provides the judgment creditor with "a choice between using the federal discovery rules and using the practice of the state court." *Evans,* 127 F.R.D. at 493; *see also El Salto S.A. v. PSG Co.,* 444 F.2d 477, 484 n. 3 (9th Cir.) ("a judgment creditor proceeding under Rule 69(a) may utilize either State practice or the federal rules for taking depositions"), *cert. denied,* 404 U.S. 940, 92 S.Ct. 273, 30 L.Ed.2d 253 (1971); *Strick Corp.,* 493 F.Supp. at 1211 (E.D.Pa.1980) ("the judgment creditor may utilize either Federal or State discovery rules"). In this case, ACIC has indicated its clear intent to pursue post-judgment discovery under the Federal Rules of Civil Procedure. Thus, the Texas practice of discovery are irrelevant.

■ LNB also argues that Texas Finance Code § 59.006 is "substantive" law as opposed to procedural law and that if it satisfied the subpoena without requiring compliance with § 59.006, it could result in liability to LNB. LNB argues that because the underlying case in New York was a diversity jurisdiction case, the Court must apply state substantive law.

As a preliminary matter, Rule 69 contains its own choice of law directive, indicative of the decision that efforts to collect judgments under Rule 69 fall within the supplemental jurisdiction of district courts. *Yang v. City of Chicago,* 137 F.3d 522, 525 (7th Cir.1998) (and citations therein). Although Rule 69 requires the application of state law governing *enforcement* of a judgment, Rule 69 does not require the use of "general state procedural law" *Apparel Art International, Inc. v. Amertex Enterprises, Ltd.,* 48 F.3d 576 (1st Cir.1995) (state doctrine on *res judicata* not followed). Further, as noted, Rule 69(a) expressly provides that the judgment creditor

may elect to conduct *discovery* exclusively under the Federal Rules of Civil Procedure. This case seeks enforcement of a subpoena in furtherance of discovery pursuant to the Federal Rules of Civil Procedure.

The language of § 59.006 establishes that it is a procedural provision. Section 59.006 is entitled: "Discovery of Customer Records." Section 59.006 states that the section provides the "exclusive method for compelled discovery of a record of a financial institution relating to one or more of its customers." Section 59.006(a) expressly provides that it "does not create a right of privacy in a record...." LNB acknowledges in its motion to quash that § 59.006 does not create a right of privilege or a privacy right (docket no. 4 at 6).[9] Therefore, § 59.006 cannot be characterized as a state-created substantive privilege.[10] LNB cites no case, Texas or federal, which holds that § 59.006 creates a privilege, privacy right or goes beyond setting the "method" or procedures to be followed when seeking customer information. If the Fifth Circuit considers Texas law which precludes the production of income tax returns to be "irrelevant" because the judgment creditor "clearly indicated its intent to pursue post judgment discovery in the manner provided by the Federal Rules of Civil Procedure," *LeGrand,* 43 F.3d at 171, then clearly a Texas law establishing the "exclusive method" to be followed when pursuing "discovery of customer records" cannot take precedence over federal discovery rules which address post-judgment discovery and compliance with subpoenas.

### Conclusion

The Court recommends that ACIC's motion to compel be granted and that LNB be required to produce the information requested in 3 and 6 within a reasonable period of time following the review of this report and that ACIC should be required to reimburse LNB for the reasonable costs of researching

---

9. *See also* docket no. 4 at 8 wherein LNB distinguishes *Sneirson v. Chemical Bank,* 108 F.R.D. 159, 162 (D.Del.1985), cited by ACIC, because "*Sneirson* did not involve the interpretation of a state statute such as Texas Finance Code § 59.006, but rather, involved a plaintiff **attempting to assert a privilege** under federal public policy and the common law of New Jersey and

the New Jersey State Constitution" (emphasis added).

10. LNB also does not contest that there is no "banker-depositor" privilege in federal law (docket no. 4 at 6).

requests 3 and 6 and photocopying. The parties should confer to attempt to come to an agreement as to estimated costs of production in advance of the incurring of costs. In response to estimated cost information, ACIC may wish to further restrict the scope of the searches as a means to reduce costs. Or, LNB may wish to file a second motion for protection in this case which seeks a court order for reimbursement of a specific amount of costs prior to complying. The entry of a protective order also is recommended that would prevent the use of any records produced for any purpose other than locating assets of the judgment debtor and execution.[11]

Both parties have requested reasonable attorneys' fees and costs incurred in connection with briefing the motion to compel. Although the Court has concluded that Texas Finance Code § 59.006 does not govern the information requested, the parties cite no case directly on point. For this reason, LNB may well have concluded that it needed the clarification of this important point instead of trying to "unring the bell" after incurring costs or disclosing certain of its non-party customer's records. Both requests for fees and costs should be denied and each side should be required to bear its own costs in connection with the motion to compel and motion to quash.

Finally, the Court notes that ACIC requested oral argument on its motion to compel. LNB did not request oral argument on its motions. The procedural context of the cross-motions suggests that the parties first may need a ruling from the District Court as to the LNB's challenges to the subpoena's relevancy, reasonableness, burdensomeness, overbreadth and, particularly, the applicability of Texas Finance Code § 59.006. Until those legal matters are resolved, conferences regarding the practical issues affecting compliance may not be productive. Oral argument is not likely to further the resolution of those practical issues until the legal issues are resolved. The undersigned has deter-

mined that the legal briefs submitted by the parties more than adequately address the legal issues presented.

## V. RECOMMENDATION

It is recommended that plaintiff ACIC's motion to compel answers to subpoena (docket no. 1) be **GRANTED**. It is recommended that LNB's motion to quash and for protection (docket no. 4) is **DENIED without prejudice** to LNB filing a further motion for protection seeking payment of the costs of complying with requests 3 and 6 or seeking redaction, as might be appropriate, of records once they have been located. It is ordered that LNB's request to file a combined response to the motion to compel and motion to quash and for protective order in excess of the page limit in the Local Rules (docket no. 4 at 13) is **GRANTED** and said document has been and shall be filed by the Clerk's Office. It is ordered that ACIC's motion for oral argument (docket no. 6) thus far is **DENIED**. Because the District Court referred this case for full pretrial management and because the parties may file further pleadings or seek hearings after the District Court has ruled on this report, the undersigned has not "returned" the case to the District Court.

## VI. INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on each and every party either (1) by certified mail, return receipt requested, or (2) by facsimile if authorization to do so is on file with the Clerk. According to Title 28 U.S.C. § 636(b)(1) and Rule 72(b), FED.R.CIV. P., any party who desires to object to this report must serve and file written objections to the Report and Recommendation within 10 days after being served with a copy unless this time period is modified by the District Court. A party filing objections must specif-

---

11. It should be noted that it appears the only significant aspects of § 59.006 not addressed by the recommendation herein are the requirements that LNB be given at least 24 days to comply (indeed, a reasonable period of compliance in

this case may be greater than 24 days from the date on which research in furtherance of compliance is begun) and the need for ACIC to first seek the written consent of the 12 named business entities.

ically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections. **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a de novo determination by the District Court.[12] Additionally, any failure to file written objections to the proposed findings, conclusions and recommendations contained in this Report and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the District Court.[13]

June 23, 2000.

**12.** *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985).

**13.** *Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428 (5th Cir.1996).